**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION**

| | |
|---|---|
| CHARLES D. FRIEDMAN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:09-CV-227 TC<br><br>District Judge Tena Campbell |

Plaintiff, Charles D. Friedman, an inmate in Federal custody housed at the Salt Lake County Jail, filed this *pro se* civil rights suit under 42 U.S.C. § 1983, *see* 42 U.S.C.A. § 1983 (West 2011), and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 410 (1971).  Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915.  S*ee* 28 U.S.C.A. § 1915 (West 2011).  As directed by the Court, the United States Marshals Service ("USMS") filed a *Martinez* Report addressing Plaintiff's claims.  The *Martinez* Report is based on sworn statements of USMS employees and Plaintiff's declaration and responses to discovery requests filed in this case.  Defendant now moves for summary judgment asserting that the record evidence does not support Plaintiff's claims and that Deputy Barajas is entitled to qualified immunity.

## I.  INTRODUCTION

Plaintiff's Amended Complaint alleges that Defendant Joey Barajas ("Deputy Barajas"), a Deputy U.S. Marshal, violated Plaintiff's constitutional rights by losing or destroying his legal

papers.  Deputy Barajas transported Plaintiff from the Cache County Jail to the Salt Lake County Jail on March 23, 2006.  Upon arrival, the Salt Lake County Jail refused to allow Plaintiff's personal property, including legal files and materials, into the facility.  Plaintiff alleges that he gave Deputy Barajas the name and address of his attorney, Deirdre Gorman, and asked that his property be given to her.  However, Plaintiff states that only two legal textbooks were ever delivered to his attorney, and that Deputy Barajas "lost or destroyed" the remaining items of his personal property, including legal files and personal items.

Plaintiff alleges that the lost legal files were prepared in anticipation of filing suit against Aramark Corporation, the food contractor at the Cache County Jail, for failing to provide Plaintiff a kosher diet.  Plaintiff alleges that he adheres to a kosher diet and that Aramark intentionally provided him non-kosher food.  Plaintiff further asserts that Deputy Barajas knew Plaintiff's legal papers related to his dispute with Aramark and that Deputy Barajas destroyed the papers to protect Aramark and the Cache County Jail.

Plaintiff's Amended Complaint asserts two claims against Deputy Barajas.[1]  First, that the confiscation and loss of Plaintiff's personal property violated his due-process rights under the Fifth Amendment (Claim II).  And, second, that the loss or disposal of Plaintiff's legal materials violated his First and Fifth Amendment right to access the courts (Claim III).  Plaintiff seeks compensatory and punitive damages from Defendant in his individual capacity.[2]

---

[1]  Claim I against the United States was dismissed previously.  (Doc. 20.)

[2]  Plaintiff concedes that his official capacity claims are barred by sovereign immunity. (Pl.'s Resp. to Def. Barajas' Summ. J. Mot. (Doc. 61) at 9.)

## II.  MATERIAL FACTS[3]

1.      Defendant Joey Barajas is a Deputy United States Marshal, currently assigned to the District of Nevada.  (Sworn Statement of Joey Barajas ("Barajas Stmt.") at 3.)  On March 23, 2006, Deputy Barajas was employed as a Deputy U. S. Marshal in the District of Utah, and was assigned to transport Plaintiff from the Cache County Jail in Logan, Utah, to the Salt Lake County Jail in Salt Lake City.  (Barajas Stmt. at 3-4.)  Deputy Charters accompanied Deputy Barajas.  (Sworn Statement of Jesse Charters ("Charters Stmt.") at 5.)

2.      The deputies picked Plaintiff up at the Cache County Jail, along with a large plastic bag containing his personal property.  Plaintiff's property included legal papers, two or three books, and personal effects.  (Barajas Stmt. at 6; Discovery Responses at 3 (Interrog. 2).)  Plaintiff sat in the back of a large passenger van during the drive from Logan to Salt Lake City.  (Barajas Stmt. at 4-5.)

3.      Neither Deputy Barajas nor Deputy Charters recalls Plaintiff saying anything about the food he was served at the Cache County Jail or any legal claims against the Cache County Jail or its food contractor, Aramark Corporation ("Aramark").  (Barajas Stmt. at 5-6; Charters Stmt. at 13-14.)  Deputy Barajas has no financial interest in Aramark and is not affiliated in any way with Aramark or the Cache County Jail.  (Barajas Stmt. at 22-23.)  Prior to his involvement in this lawsuit, Deputy Barajas was not familiar with Aramark Corporation and

---

[3]  The statement of material facts here consists of the "Statement of Undisputed Material Facts" presented in Defendant's Memorandum in Support of Motion for Summary Judgment (Doc. 33) followed by a summary of Plaintiff's responses to those facts he deems disputed. Whether any asserted factual dispute is genuine or material will be discussed later.

was not aware that it provided food to Cache County Jail inmates.  (*Id*.)

**Plaintiff's Response:**

Plaintiff recalls Deputy Barajas asking what Plaintiff's "beef" was with Aramark. (Friedman Decl. ¶ 2.)  Plaintiff asserts this question implied the reason for his removal from the Cache County Jail.  Plaintiff also asserts that Deputy Barajas has "some affiliation" with the Cache County Jail by virtue of the routine interactions between the USMS and the jail, which contracts to house federal prisoners.

4.      When the deputies delivered Plaintiff to the Salt Lake County Jail, jail officials refused to accept Plaintiff's legal papers and books.  (Barajas Stmt. at 9-10; Charters Stmt. at 6.) Deputy Barajas and Salt Lake County Jail officials prepared a "Prisoner Property Sheet," which contained an inventory of the property that Plaintiff was allowed to keep at the jail.  The Prisoner Property Sheet also indicated that Deputy Barajas retained Plaintiff's "legal paperwork." (Barajas Stmt. at 13-14 & Ex. 1.)

5.      Deputy Barajas told Plaintiff that the USMS would mail the bag containing Plaintiff's legal paperwork to an attorney or other person designated by Plaintiff.  (Barajas Stmt. at 10-12; Charters Stmt. at 6.)  Deputy Barajas further advised Plaintiff that his property would be disposed of after a period of time if it was not delivered to someone designated by Plaintiff. (*Id*.)  Under USMS directives, if prisoner property is not picked up within 30 days by someone designated by the prisoner, the property is subject to disposal by the USMS.  (Sworn Statement of Jim Phelps ("Phelps Stmt.") at 8-9 & Ex. 2.)  Deputy Barajas does not recall that Plaintiff designated anyone to whom he wanted his property delivered.  (Barajas Stmt. at 12.)  Deputy

4

Charters recalls that Plaintiff said that he would contact his attorney, Deirdre Gorman, and arrange for her to pick up the property at the USMS office in Salt Lake City.  (Charters Stmt. at 6-8.)

**Plaintiff's Response:**

Plaintiff denies being told that his property would be disposed of after a period of time.  (Friedman Decl. ¶ 6.)  Plaintiff also states that he told Barajas his property could be mailed to or picked up by his attorney, Deirdre Gorman, and that Barajas said he knew Gorman.  (*Id.*)  Plaintiff further asserts that when he repeatedly insisted upon a detailed property inventory a "heated," angry discourse ensued in which Barajas said: "How about I just dump this crap in the trash, and we won't have to worry about it?"  (*Id.*)

6.      Deputy Barajas testified that he took the bag containing Friedman's legal papers and books from the Salt Lake County Jail and delivered it to Deputy Charters at the USMS office.  (Barajas Stmt. at 16-17.)  Deputy Charters recalls that it was he who took Plaintiff's property from the Salt Lake County Jail to the USMS office.  (Charters Stmt. at 9.)  In either event, once the property was delivered to the USMS office, Deputy Charters attached a label with Friedman's name to the bag and placed the bag in the section of the USMS office designated for storage of prisoner property.  (Charters Stmt. at 9.)

**Plaintiff's Response:**

Plaintiff recalls seeing Barajas walk out of the jail with the bag of property in his hand and having a "gut feeling" he would never see it again.  (Friedman Decl. ¶ 7.) Plaintiff asserts this intuition was based on his prior dealings with the USMS and because

5

it was well known to the USMS in Utah, including Barajas, that the legal materials

belonging to him contained legal actions and complaints aimed at local jail conditions

and at Aramark.  (Friedman Decl. ¶¶ 3, 8.)

7.     Deputy Barajas had no responsibility for the storage or disposal of Plaintiff's

property after it was delivered to the USMS office.  (Barajas Stmt. at 17-18.)  Deputy Barajas did

not destroy Plaintiff's property, and none of the deputies who were interviewed knows what

happened to Plaintiff's property after Deputy Charters stored it at the USMS office.  (Barajas

Stmt. at 18-19, 22; Charters Stmt. at 10, 13; Phelps Stmt. at 20-21, 27-29.)

**Plaintiff's Response:**

Plaintiff states that in his experience with the USMS in Utah inmate property is

typically handled by the transporting deputy who is responsible for marking, packaging

and, if necessary, mailing the property.  (Friedman Stmt. ¶ 9.)  Plaintiff asserts this

observation is supported by Phelps' statement that: "We just take it back, box it up, and

we'll ship it off to whomever . . . ."  (Phelps Stmt. at 8.)

8.     Plaintiff admits that he has no personal knowledge of what was done with his

property after it was taken from the Salt Lake County Jail.  (Disc. Resp. at 1-2 (Req. for Admis.

1, 3).)

**Plaintiff's Response:**

Plaintiff disputes this statement to the extent it conflicts with evidence that

Barajas later provided two volumes of the *Federal Sentencing Guidelines and Manual*

that were included with Plaintiff's property to Ms. Gorman at the USMS office some

6

weeks after Plaintiff's transfer.  (Gorman Aff. ¶ 20.)

9.      Plaintiff states that his attorney, Deirdre Gorman, informed him that Deputy
Barajas gave her Plaintiff's two-volume "Federal Sentencing Guidelines Manual" when she was
at the courthouse building "some weeks after March 23, 2006."  (Discovery Responses at 3
(Interrog. 3).)  Deputy Barajas does not recall giving Ms. Gorman the books but recalls that he
encountered Ms. Gorman in the USMS office and that she told him she had received two of
Plaintiff's books.  (Barajas Stmt. at 19-22.)

10.      After Plaintiff's property was disposed of, Deputy Phelps received a letter from
Plaintiff asking for replacement of certain legal papers and records that he claimed the USMS
had disposed of.  (Phelps Stmt. at 15-16.)  Deputy Phelps did not retain copies of correspondence
with Plaintiff but believes he received Plaintiff's letter after Plaintiff was transferred out of the
Salt Lake County Jail on August 3, 2006.  (Phelps Stmt. at 11, 24-25.)  Deputy Phelps was able
to provide Plaintiff duplicates of all of the records he requested except certain prison records that
Deputy Phelps was advised could not be released to Plaintiff.  (Phelps at 15-17.)

**Plaintiff's Response:**

Plaintiff does not recall ever writing to Phelps about the incident at issue here and
asserts that Phelps may be confused with another incident in which Plaintiff challenged a
loss of property following a transfer from the Davis County Jail.

11.      Plaintiff claims that he lost 18 categories of property.  (Discovery
Responses at 2-3 (Interrog. 1) and attached "Itemized Inventory–Valuation of Lost/Destroyed
Property" ("Inventory").)  Plaintiff concedes that he was able to replace 14 of the 18 categories of

lost property, which include various legal papers, research materials, and personal items. Plaintiff claims that he was unable to replace the following categories of property: "Declaration of Cellmate" (Item No. 5); "Journal/Log of Meals, 30 days (Aramark)" (No. 6); "Compilation of Exhibits (food labels and wrappers by meal)" (No. 7); and "Personal Photographs" (No. 17). (Inventory at 1, 3.)  Plaintiff concedes that his personal photographs were not related to his claim against Aramark.  (Disc. Resp. at 6-7 (Interrog. 10).)

       12.    Plaintiff never filed a claim against Aramark Corporation.  Plaintiff explained his failure to do so as follows:

> I did attempt to pursue a civil action against Aramark Corporation, insofar as I replaced legal research materials, duplicated research/notes and redrafted a complaint and supporting declaration.  However, the civil action against Aramark Corporation was not further pursued after Davis County Sheriff's Deputies lost or destroyed my legal materials once again, and I determined that, even with a complaint and declaration, the supporting evidence described in item numbers 5, 6 and 7 was vital to proving my claims, and was not replaceable.

(Disc. Resp. at 6-7 (Interrog. 10).)

**Plaintiff's Response:**

       Plaintiff reiterates that the reason he could not proceed with his suit against Aramark is due to the loss of Items 5-7 in his Itemized Inventory, which were allegedly lost or destroyed by Deputy Barajas.  (Friedman Stmt. ¶ 13.)  Plaintiff denies that his inability to proceed against Aramark had anything to do with the subsequent loss of property attributed to Davis County.  (*Id*.)  Plaintiff further denies ever intentionally corresponding with Deputy Phelps, and denies that Phelps ever replaced any of the lost documents or other items.  (Friedman Stmt. ¶ 11.)

8

### III.  SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," *Cellotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986), thus, "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought."  Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case."  *Cellotex*, 477 U.S. at 325.  This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).  Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.*  A fact in dispute is "material" only if it might affect the outcome of the suit under governing law.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  The dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A nonmovant "that would bear the burden of persuasion at trial" must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial

9

from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144

F.3d 664, 671 (10th Cir. 1998).  Mere allegations and references to the pleadings will not suffice,

instead, the specific facts put forth by the nonmovant "must be identified by reference to an

affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita

Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992).  Moreover, "the nonmovant's

affidavits must be based upon personal knowledge and set forth facts that would be admissible in

evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d

1106, 1111 (10th Cir .1991).  The court must "examine the factual record and reasonable

inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v.

LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).  Conclusory allegations are given no weight, and

"[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position

will be insufficient" to overcome a summary judgment motion.  *Anderson*, 477 U.S. at 249, 252.

### IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Due Process Claim

In Claim II, Plaintiff alleges that Deputy Barajas violated Plaintiff's Fifth Amendment

due process rights when he "destroyed" Plaintiff's personal property, including his legal

materials.  (Am. Compl., ¶¶ 18-19.)   By use of the word "destroyed" Plaintiff appears to allege

deliberate action by Deputy Barajas, rather than mere negligence.

In *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984) the Supreme

Court held that "an unauthorized intentional deprivation of property by a state employee does not

constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful post-deprivation remedy for the loss is available."  468 U.S. at 533,

104 S. Ct. at 3204.  This reasoning has been extended to apply to *Bivens* claims stemming from

property deprivations caused by federal actors.  *See Raditch v. United States*, 929 F.2d 478, 481

(9th Cir. 1991) ("Although *Hudson* involved § 1983 and the Fourteenth Amendment, the same

due process principles apply to the federal government through the Fifth Amendment.").

Applying this reasoning, the Tenth Circuit has upheld the dismissal of Fifth Amendment property

deprivation claims based on the availability of a post-deprivation remedy under the Federal Tort

Claims Act ("FTCA").  *See Muhammad v. Finley*, 74 Fed. Appx. 847, 849, 2003 WL 40501, **2

(10th Cir. 2003) ("We likewise fail to see how the district court erred in holding that [Plaintiff's]

claims, to the extent they can be construed as alleging an unauthorized, intentional deprivation of

his property, were not actionable under the Due Process Clause due to the availability of a tort

action under the FTCA."); *see also Teague v. Clark*, 2008 WL 2235687, *6 (D. Colo. 2008)

(dismissing *Bivens* claim for intentional property deprivation because remedy available under

FTCA bars due process claim).

　　　Under the *Hudson* framework a plaintiff seeking damages for an unauthorized or

intentional deprivation of property without due process "has the burden of pleading and proving"

that available post-deprivation remedies "are inadequate to redress the claimed wrong."  *See*

*Gillihan v. Shillenger*, 872 F.2d 935, 940 (10th Cir. 1989).  Here, Plaintiff has failed to make

such a showing.  Although Plaintiff asserts that the USMS has no formal procedure for resolving

grievances, he has not shown that an adequate post-deprivation remedy was unavailable under

the FTCA.  Because Plaintiff fails to make the required showing under *Hudson*, the Court

11

concludes that Plaintiff's Fifth Amendment due process claim must be dismissed.

## B.  Court Access Claim

Plaintiff claims the Defendant Barajas violated Plaintiff's First and Fifth Amendment right to access the courts by intentionally destroying or deliberately mishandling legal files and documentary evidence related to Plaintiff's dispute with Aramark and the Cache County Jail. (Am. Compl., ¶¶ 18-19.)  Plaintiff alleges that Deputy Barajas knew about Plaintiff's dispute with Aramark and intentionally acted to interfere with a potential lawsuit.

### i.  Legal Standard

It is well-recognized that prison inmates "have a constitutional right to 'adequate, effective, and meaningful' access to the courts . . . ."  *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir. 1980), cert. denied, 450 U.S. 1041, 101 S. Ct. 1759 (1981).  The right of access to the courts is guaranteed by the Due Process Clauses of the Fifth and Fourteenth Amendments.  *Ward v. Kort*, 762 F.2d 856, 858 (10th Cir. 1985).  Generally, this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817, 822, 97 S. Ct. 1491, 1495 (1977)).  In addition, "prison officials may not affirmatively hinder a prisoner's efforts to construct a nonfrivolous appeal or claim," such as by the "improper destruction of his legal materials."  *Green v. Johnson*, 977 F.2d 1383, 1389-90 (10th Cir. 1992).

However, not every loss of a prisoner's legal materials supports a constitutional claim. Where a prisoner's legal materials are lost during transmission, the prisoner must show that the

defendant "interfered with the transmission of an inmate's legal papers for the purpose of thwarting the inmate's litigation . . . ." *Crawford-El v. Britton*, 951 F.2d 1314, 1318 (D.C. Cir. 1991), *cert. denied*, 506 U.S. 818 (1992). Under this "specific intent" standard, the prisoner must show that the defendant "knew his property contained legal papers relevant to pending litigation and [he] diverted the property with the purpose of interfering with his litigation, or at least with deliberate indifference to such interference." *Id*. Conversely, if the method of transmission used by the defendant was reasonable and the loss of the legal materials was merely negligent, the prisoner cannot prevail. *Id*. at 1318-19.

Finally, in order to prevail on a court-access claim based on the seizure or loss of legal materials, the prisoner must establish actual injury or prejudice to specific litigation. *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999), *cert. denied*, 531 U.S. 1081 (2001). The prisoner need not show that he would have prevailed in the underlying case but for the loss of his legal materials. *Clemmons v. Davies*, No. 94-3268, 1996 WL 282283, at *4 (10th Cir. May 29, 1996) (unpublished). "However, the prisoner's prosecution of the underlying action must be affirmatively hindered in some significant way; there must be 'actual substantial prejudice to specific litigation.'" *Id*. (quoting *Gentry v. Duckworth*, 65 F.3d 555, 559 (7th Cir. 1995)).

### ii. Evidentiary Sufficiency

Plaintiff asserts there is sufficient evidence in the record to support the conclusion that Deputy Barajas intentionally lost Plaintiff's legal materials in order to interfere with his suit against Aramark. First, Plaintiff asserts there is sufficient evidence to show that the loss of the

items prevented him from pursuing a non-frivolous religious accommodation claim against

Aramark and Cache County Jail.  Second, Plaintiff argues there is ample evidence that Barajas

knew about Plaintiff's dispute with Aramark, both because it was common knowledge and based

on statements Barajas made to Plaintiff during his transfer.  Finally, Plaintiff asserts that the

evidence supports the finding that Barajas intentionally lost or mishandled Plaintiff's legal

papers.  The Court addresses each of these issues in turn.

### a.  Interference with Non-Frivolous Litigation

Plaintiff has presented sufficient evidence to show that the loss of his property caused

actual substantial prejudice to specific litigation.  Plaintiff alleges that the items lost included

"substantial logs," "physical evidence," and 200 hours worth of "legal research and drafting of

pleadings" relating to a possible civil action against Aramark.    (Am. Compl., ¶¶ 24-26, 28.) ,

Although Plaintiff concedes that he was able to replace 14 of the 18 categories of lost property,

and that one of the remaining categories was unrelated to his contemplated litigation against

Aramark, Plaintiff's sworn declaration states that three of the lost items were irreplaceable and

crucial to his intended suit against Aramark, including menu logs, food labels and packaging

from food trays collected while at the jail.  (Friedman Decl. ¶ 12.)  Plaintiff's statement that he

intended to sue Aramark and the Cache County Jail is also supported by Gorman's sworn

statements that Plaintiff complained to her about non-kosher food at the Cache County Jail and

that she wrote a letter to Aramark about the situation but received no response.  (Gorman Aff. ¶¶

10-13.)

Defendant's contention that Plaintiff's legal access claim must fail because he cannot

14

show prejudice to an "ongoing case" is unavailing.   Plaintiff is not foreclosed from showing

actual prejudice to specific litigation simply because he had not yet filed his intended lawsuit

when his property was lost.  To hold otherwise would only encourage interference with intended

litigation before a case is actually filed.  Here, there is ample evidence showing that Plaintiff's

lost property included items that were directly relevant to specific, non-frivolous litigation

Plaintiff was pursuing against Aramark and the Cache County Jail.

### b.  Defendant's Knowledge

The only direct evidence that Barajas knew about Plaintiff's dispute with Aramark is the

alleged statements Barajas made to Plaintiff during his transfer.  According to Plaintiff's

declaration, while Plaintiff was alone with Barajas waiting for Deputy Charter to retrieve the van,

Barajas asked him: "So, what's your beef with Aramark and the jail here?"  Plaintiff responded

that he "had proof that Aramark was feeding [him] non-kosher foods, and the Aramark kitchen

manager and jail commander were lying to [him] about it."  (Friedman Decl. at 2.)  Plaintiff

states that he specifically recalls this conversation because it confirmed his suspicion regarding

the actual reason for his transfer.  Plaintiff's only other evidence that Defendant knew about

Plaintiff's dispute with Aramark is his assertion that it was common knowledge based on his

reputation for promoting prisoner's rights and his long history with the USMS in Utah.

Defendant Barajas denies that the conversation alleged by Plaintiff ever occurred and

states that he was not even familiar with Aramark prior to this litigation.  Defendant further

asserts that even accepting Plaintiff's version of events, the conversation does not support the

finding that Defendant knew Plaintiff's property included documents related to a potential suit

against Aramark, much less that Defendant destroyed the property to interfere with such a suit. Finally, Defendant rejects Plaintiff's assertion that his dispute with Aramark was common knowledge among USMS personnel.

Plaintiff's evidence is not sufficient to show that Deputy Barajas knew Plaintiff intended to sue Aramark using legal materials in his possession at the time of his transfer.  As an initial matter, Plaintiff's unsupported, glaringly self-serving affidavit is not sufficient to defeat Defendant's summary judgment motion.  *See Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)("[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment.").  Given the noticeable absence of any additional evidence in the record to corroborate the conversation described in Plaintiff's declaration it is not sufficient by itself to create a genuine issue of material fact for trial.  Moreover, even accepting Plaintiff's statements at face value, it would require a leap in logic for Barajas to have assumed that merely disposing of Plaintiff's property would significantly hinder him from suing Aramark or Cache County.  Although Plaintiff reports telling Defendant that he "had proof" of Aramark's alleged wrongdoing, he did not say anything about the nature of the proof, nor did he say that it was in his possession at the time.  In addition, given Plaintiff's admitted reputation for being "an advocate for jail and prison reform" (Gorman Aff. ¶ 16) and a frequent litigator, Defendant would have had little reason to believe that merely interfering with Plaintiff's property would prevent him from proceeding against Aramark or the jail.

Finally, even if Plaintiff could show that Defendant knew Plaintiff intended to sue, there is no evidence that Defendant had any reason to protect Aramark or the jail.  Plaintiff attempts to

16

side-step this fact by offering his bald opinion that there is "no doubt" Defendant had a "legal, professional affiliation" with Aramark and the Cache County Jail, and asserting that there is an "obvious comradeship" between USMS and jail staff.  These assertions, however, are pure speculation and are not supported by any facts.  Moreover, even assuming a minimal level of comradeship between USMS and jail staff, it is hard to imagine that Defendant would risk jeopardized his career by destroying Plaintiff's property merely to protect Aramark or Cache County.

Thus, the Court finds that "the mere scintilla of evidence" Plaintiff has produced regarding Defendant's knowledge of, or intent to interfere with, a potential lawsuit against Aramark or Cache County is not sufficient to create a dispute of fact that is "genuine."  *See McGarry v. Bd. of County Comm'rs of Pitkin County*, 175 F.3d 1193, 1198 (10th Cir. 1999).

### c. Defendant's Intent

Plaintiff also fails to present sufficient evidence to show that Defendant intentionally mishandled or destroyed Plaintiff's property.  Plaintiff offers three arguments to support this allegation: (1) Plaintiff last saw Defendant with the property and it subsequently went missing; (2) Defendant threatened to "dump" the property in the trash; and, (3) Defendant's statement that he had nothing to do with the property after reaching the USMS office contradicts Gorman's affidavit.  None of these arguments are compelling.

The simple fact that Defendant had the property when he left the Salt Lake County Jail and that it later went missing says nothing about what actually happened to it.  Although Plaintiff makes a great deal out of discrepancies regarding who marked the property or exactly where it

was placed in the USMS office, these issues are largely irrelevant to the question whether the property was intentionally destroyed by Defendant.  Plaintiff has not refuted credible evidence that his property arrived at the USMS office and was marked and placed in the designated storage area.  Moreover, the fact that the property arrived at the USMS office, and that some of it eventually reached Plaintiff, thoroughly undermines Plaintiff's speculation that Defendant may have followed through with his alleged threat to dump it all in the trash.  In addition, because the methods used by Defendant to handle Plaintiff's property were reasonable, albeit imperfect, one can only conclude that the loss of Plaintiff's legal materials was merely negligent, not intentional.

As far as any inconsistency created by the Gorman affidavit, those issues are not material to whether Defendant intentionally destroyed or deliberately mishandled Plaintiff's property.  Admittedly, Defendant's statement that he had no further involvement with Plaintiff's property after giving it to Deputy Charters for marking and storage is controverted by Gorman's testimony that she later received some of Plaintiff's books from Defendant.  However, Gorman's testimony does not support the conclusion that Defendant acted inappropriately.  In fact, Gorman states that after receiving Plaintiff's two-volume *Sentencing Guidelines Manual* from Defendant she asked "if he had Mr. Friedman's *Federal Criminal Code* or any other property of [Plaintiff's]" and that Defendant "went back into the Marshal's Office to look . . . and thereafter informed [her] that he could not find any other property of [Plaintiff's]."  (Gorman Aff. ¶ 20.)  Gorman's statement does not show that Defendant acted inappropriately or gave any indication that Plaintiff's property might have been mishandled.   Instead, it shows that Defendant acted appropriately and, when questioned by Gorman, even double-checked to make sure he hadn't overlooked anything.

Thus, the Court finds that there is insufficient evidence to create a genuine issue of material fact as to whether Defendant intentionally mishandled or destroyed Plaintiff's property.

## V.  CONCLUSION

The well-developed record in this case shows there are no genuine issue of material fact remaining for trial and that Defendant is entitled to judgment as a matter of law.  Regarding Plaintiff's due process claim, the record shows that Plaintiff has not met his burden of showing that available post-deprivation remedies, including the Federal Tort Claims Act, were inadequate to redress Plaintiff's alleged property losses.  Regarding his court access claim, Plaintiff has not met his burden of showing a genuine issue of material fact concerning whether Defendant knew Plaintiff's property included documents related to potential litigation, or that Defendant intentionally destroyed Plaintiff's property to interfere with any such suit.  Because the evidence does not support a finding that Defendant violated Plaintiff's constitutional rights the Court need not address whether Defendant is entitled to qualified immunity.

**ORDER**

Based on the forgoing, **IT IS HEREBY ORDERED** that Defendant's Motion for

Summary Judgment (Doc. 32) is **GRANTED** and this case is **CLOSED**.

DATED this 27th day of October, 2011.

BY THE COURT:

TENA CAMPBELL
United States District Judge